## UNITED STATES v. ST. LOUIS, A. & T. R. Co. et al.

*(District Court, E. D. Missouri, E. D.    July 8, 1890.)*

NAVIGABLE WATERS—OBSTRUCTION—FAILURE TO REMOVE.
  Notice was served on a railroad company under Act Cong. Aug. 11, 1888, requiring it to alter its bridge over a certain river so that it would not obstruct navigation. Before the time allowed for the purpose had expired, the company was dispossessed of its property, including the bridge, and receivers thereof were appointed, in judicial proceedings instituted by mortgage bondholders. The notice not having been complied with, an action was brought against the receivers and the company to recover the fine imposed by the statute in such cases. *Held*, that the receivers would not be held liable, as no notice had been served on them in their official capacity, though prior to their appointment they had notice that the company had been notified to alter the bridge, as the statute required the notice to be served on the person or corporation owning or controlling the objectionable structure; and that the company was not liable, as the fact that it had been dispossessed of its property by judicial proceedings was a sufficient excuse for its non-compliance with the notice.

At Law.

This is an action of debt founded on the nineth and tenth sections of the appropriation act of August 11, 1888, (25 St. at Large, 424, 425.) The declaration shows that on February 23, 1889, notice was served on the St. Louis, Arkansas & Texas Railroad Company by the honorable secretary of war requiring it to alter its bridge over the St. Francis river by September 1, 1889, so that it would not be an obstruction to navigation; that on June 24, 1889, the defendants Fordyce and Swanson were appointed receivers of the St. Louis, Arkansas & Texas Railway Company in the suit to foreclose certain mortgages on the property of the railroad company brought by mortgage bondholders, and that as such receivers they immediately took possession of the St. Louis, Arkansas & Texas Railroad. including the bridge in question, and have since continued to operate the road under the orders of this court; that the alterations were not made as required by the order of the honorable secretary of war, and in consequence of such default a penalty of $500 per month, as declared by the statute, is demanded. The action is brought against the receivers, Fordyce and Swanson, as well as against the railway company, and all of the defendants have demurred to the declaration.

*Geo. D. Reynolds*, U. S. Dist. Atty.

*Samuel H. West*, for defendants.

THAYER, J., (*orally, after stating the facts as above.*) The receivers clearly are not liable for the penalty imposed by the statute, because they have never been notified by the secretary of war to make any alteration in the bridge. It is wholly immaterial that the receivers had notice, prior to their appointment and acceptance of the office, that the railway company had been notified to make alterations in the bridge. The statute on which the prosecution is based requires notice to be served on the person or corporation owning or controlling the objectionable structure, before such person or corporation can be held liable to a fine, and it is not pretended that the secretary of war caused any notice to be served on

Fordyce and Swanson in their capacity as receivers; hence they cannot be held liable in this proceeding. The court is also of the opinion that the railway company is not liable for the penalty herein sued for. By virtue of the law under which the secretary of war acted, the railway company had until September 1, 1889, to alter the bridge. They were not in default until that time arrived. The fact that the company was dispossessed of its property, including the bridge in controversy, by judicial proceedings instituted by the mortgage bondholders, on June 24, 1889, and was for that reason unable to comply with the order of the secretary of war, is, in my judgment, a sufficient excuse for non-compliance with the order. It may be conceded that, if the railway company had assumed by private contract to alter the bridge on or before a given date, it would be no excuse for the non-performance of such contract that within the time limited it had been dispossessed of its property. But there is a marked distinction between duties assumed by contract and duties imposed by operation of law. A party is sometimes excused for the non-performance of duties of the latter class, when he would not be excused for the non-performance of duties assumed by contract. The duty imposed on the railroad company in this instance was a duty imposed against its will by operation of law, and it is, in my judgment, a sufficient excuse for the non-performance of that duty that it was deprived of the means of executing the order of the secretary of war by judicial proceedings taken against it by the mortgage bondholders. The fact that it was dispossessed of its property, not voluntarily, but against its will, by decree of a court of competent jurisdiction, must be held to be a valid excuse for non-compliance with the order of the secretary of war. If the honorable secretary had caused the fact to be brought to the attention of the court that the bridge was an obstruction to navigation, and that the railway company had been ordered to alter it, it would clearly have been the duty of the court to have ordered an alteration of the structure, by its receivers, out of the income received by them from the operation of the road. But no such action has been taken by the government in behalf of the public. For the reasons thus briefly indicated, I conclude that neither the receivers nor the railway company are liable for the penalty sued for, and the demurrers to the declaration are accordingly sustained.